WESCOTT et al. v. MULVANE.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1893.)

No. 230.

1. SPECIFIC PERFORMANCE—TENDER BY COMPLAINANT.
An agreement to sell the whole capital stock of a corporation, the first payment to be made in cash on the subsequent signing of a more formal contract, there being no stipulation as to time of delivering the stock, is not specifically enforceable when the purchaser has failed to tender the first payment as agreed, demanding that the stock should be first deposited in a bank.

2. SAME—INJUNCTION—DISSOLUTION.
Where, under a bill for specific performance of a contract of sale, complainant, after securing a temporary injunction against a sale to other parties, withdraws "so much of the bill as seeks specific performance," with the understanding that if the court finds him entitled to specific performance it shall award damages in lieu thereof, it is then proper to dissolve the injunction, since it could only be awarded as incident to the relief originally sought.

Appeal from the Circuit Court of the United States for the District of Kansas.

v.58 F.no.2—20

In Equity. Suit by George P. Wescott and Samuel Hanson against Joab Mulvane for specific performance of a contract. The court below dismissed the bill, and complainants appeal. Affirmed.

W. H. Rossington and Charles Blood Smith, (E. J. Dallas, on the brief,) for appellants.

A. L. Williams, for appellee.

Before SANBORN, Circuit Judge, and THAYER, District Judge.

THAYER, District Judge. This was originally a bill filed by the appellants against the appellee to specifically enforce the following contract:

"Boston, December 14th, 1889.

"Gentlemen: I will sell you the entire capital stock of the Topeka Water-Supply Company, of Topeka, Kansas, which consists of 4,000 shares of par value of $100 per share, for the sum of five hundred thousand dollars, ($500,-000,) on the following terms of payment, viz.: The sum of sixty thousand dollars ($60,000) to be paid in cash on the signing of a contract to be. made and entered into as of this date, the consideration named in said contract to be.four hundred and forty thousand dollars, ($440,000,) to be paid as follows, viz.: The sum of two hundred thousand dollars ($200,000) to be paid February 10th, 1890, one hundred and forty thousand dollars ($140,000) to be paid February 20th, 1890, and one hundred thousand dollars ($100,000) to be paid March 20th, 1890; provided, that final payment of the last-named sum of one hundred thousand dollars may be paid on February 20, if said Wescott and Hanson may elect so to do, by giving me five days' notice of such intention. Payments to be made for and delivery of said stock to be made at the National Bank of North America, in the city of Boston, Mass.

"Joab Mulvane.

"To George P. Wescott, Samuel Hanson."

"We hereby accept your offer to sell the entire capital stock of the Topeka Water-Supply Company for the price and on the terms and conditions above stated.                                         Geo. P. Wescott.

"Samuel Hanson."

Other persons and corporations besides the appellee were at first made parties defendant, with whom, as the bill charged, the appellee had entered into negotiations after the execution of the foregoing contract, with a view of forming a new corporation known as the Topeka Water Company, and transferring to it the property and franchises of the Topeka Water-Supply Company, and capitalizing such new corporation at a sum largely in excess of the sum which the appellants had agreed to pay for the stock of the Topeka Water-Supply Company. A preliminary injunction against all of said original defendants was prayed for and obtained on the filing of the bill, restraining them, in substance, from carrying out the negotiations aforesaid, and from putting on the market any of the securities of the new corporation, and from canceling the stock of the Topeka Water-Supply Company, and from transferring its franchises and property to the new company. A motion to dissolve that injunction was subsequently made, and on a hearing of the same it.was sustained, and the injunction was thereupon dissolved. Afterwards a stipulation was made and filed in the case whereby the bill was dismissed as to all of the defendants except the appellee. This stipulation contained, among other things, the following clauses: ;

"(2) Complainants hereby withdraw so much of their bill as seeks a specific performance of the alleged contract between complainants and Joab Mulvane, described in said bill of complaint."

"(4) Nothing contained in this stipulation shall be construed in any way as an admission that complainants' bill was improperly brought for specific performance.

"(5) Nothing contained in this stipulation shall enlarge or lessen, or in any manner affect, the rights or remedies of complainants against Joab Mulvane in this suit, or in any other action, except as contained in paragraph 2 hereof. * * *"

The bill appears to have been thereafter retained, by consent of all parties, with the understanding that the case should be tried and that damages should be assessed by the court in lieu of a decree of specific performance, as for a breach of said contract, if the court was of the opinion that the appellants were originally entitled to specific performance. Considerable testimony was thereupon taken, and on final hearing the circuit court dismissed the complaint.

We shall indulge in no criticism of the regularity or propriety of the foregoing proceedings. The case having been argued in this court upon the evident assumption that the parties had a right to thus turn a proceeding in equity into a suit at law, and to make the damages dependent upon the question whether there was an original right to specific performance, we shall proceed to consider and treat the case upon that theory; the question being whether, in view of all of the circumstances attending the making and execution of the agreement, it was one which a court of equity would specifically enforce.

The contract was executed in the city of Boston late in the evening of Saturday, December 14, 1889, but there had been some preliminary negotiations between the parties at Topeka, Kan., on the 12th of the preceding November. The appellants resided respectively at Portland, Me., and Boston, Mass., while the appellee resided at Topeka, and was the chief executive officer and a large shareholder in the Topeka Water-Supply Company. The testimony shows that the parties had met by appointment in the city of Boston on the day the contract bears date, and that they had had a lengthy conference before it was finally signed. In the course of that interview the defendant informed the complainants that he had not as yet succeeded in obtaining control of certain shares of stock of the Topeka Water-Supply Company of the par value of $12,000; that the residue of the stock was within his control, but that he only had shares of the par value of $40,000 with him; that he must have $60,000 cash in hand on signing the contract, and that a Mr. Burr, who was president of a Boston bank, would probably be willing to guaranty that the payment of the $60,000 would be a safe thing to do under these circumstances. With this information the contract above set out was drawn and signed, and the parties separated to meet on the following Monday, December 16, 1889. When the parties met on the succeeding Monday the appellants submitted a form of contract to be signed by the appellee in pursuance of the stipulation in the preliminary contract above set out, which provided that $60,000 should be paid to the defendant on the signing of the same, but

which also contained a provision that the defendant should "at once place in the hands of the cashier of the National Bank of North America in the city of Boston, Mass., the certificates representing the entire capital stock of the Topeka Water-Supply Company." They further informed the defendant that the Mr. Burr referred to had refused to give the above-mentioned guaranty, although he had given him "a high recommendation for integrity and financial ability." Thereupon a long controversy appears to have ensued, in which the complainants undoubtedly took the ground that they ought not to pay the $60,000 unless the entire capital stock of the water-supply company was first deposited in the National Bank of North America, while the defendant contended that that was an evasion of the terms of the provisional agreement of December 14, 1889, and that the $60,000 should be forthwith paid, and that the complainants should trust to his ability to make good his promise to deliver the stock. Not being able to come to an understanding, the parties separated, and the negotiations came to an end.

It is perfectly obvious, we think, from an inspection of this record, that the complainants at no time tendered to the defendant the sum of $60,000 at the National Bank of North America in the city of Boston or elsewhere, or ever professed a willingness to pay him that sum until he had deposited the entire capital stock of the water-supply company in the Boston bank aforesaid, which deposit of stock, as the complainants well knew, the defendant was not prepared to make. Under these circumstances we must conclude, as the circuit court appears to have done, that the complainants were not entitled to specific performance of the contract, for the reason that they never placed the defendant in default by tendering to him the sum which he was clearly entitled to receive before the delivery of any stock. The fact seems to be that the contract of December 14, 1889, was intended as a brief statement of the more important stipulations that were to be embraced in a contract to be subsequently drawn which should cover all the details of the transaction, but when this subsequent contract was drawn and presented it was found that it did not express the intentions of one of the parties at least as to the matter of the delivery of the stock, concerning which nothing had been said in the original agreement except by implication. We are not disposed, however, to question the proposition that the contract counted upon in the bill is a complete contract, nor the further proposition that such an agreement may be specifically enforced. For present purposes both of these propositions may be conceded, but, conceding them to be well founded, we are nevertheless of the opinion that the agreement called for the payment of $60,000 before the defendant could be required to deliver any stock, and, as no money was tendered, he is not shown to have been at any time in default.

It is assigned for error that the circuit court erred in dissolving the temporary injunction as well as in dismissing the bill on the ground heretofore stated. As the first of these assignments was somewhat pressed on the argument, it becomes necessary to say,

and we think it is all-sufficient to say, that the appellants cannot be heard to complain in this court of the order dissolving the temporary injunction after voluntarily withdrawing so much of their bill as sought a specific performance of the alleged contract. An injunction could only be awarded as an incident to that species of equitable relief, and when the allegations and the prayer of the bill looking to that form of relief were withdrawn the injunction necessarily shared the same fate.

Finding no error in the record, the decree of the circuit court is in all things affirmed.